OPINION OF THE COURT
Kenneth R. Fisher, J.
Subsequent to the issuance of the decision and order of this court dated August 12, 2008, which, inter alia, preliminarily enjoined Christopher Crowley from employment with codefendant TeleTech Holdings, Inc., plaintiffs counsel wrote to the court, in a letter dated August 13th, requesting that the 12-month period of the applicable covenant not to compete commence to run on the date that the preliminary injunction becomes effective, rather than the date when Crowley terminated employment with plaintiff. The parties have agreed to let the court decide this issue on letter submissions.
In his letter, plaintiffs counsel supported this position with the cases of J. H. Goldberg Co. v Stern (53 AD2d 246 [4th Dept 1976]) and New York Real Estate Inst., Inc. v Edelman (42 AD3d 321 [1st Dept 2007]). He submits that both cases establish an authoritative precedent that, in an instance in which a former employee unilaterally breaks a covenant not to compete, the interests of justice demand that the contractual term of the covenant begins to run on the date of the issuance of the preliminary injunction, not the date specified in the agreement, here on termination of employment.
In response, defense counsel initially noted that plaintiff had requested in the complaint itself that Crowley only be restricted for one year following his termination of employment with plaintiff. Defense counsel stresses that there was no automatic extension clause bargained for in the agreement. In sum and substance, counsel seeks to distinguish this case from the factual situations presented in the cases cited by plaintiff. In particular, defendants submit that the prime consideration in Edelman was the defendant’s acts of deception, whereas here, to the contrary, Crowley’s employment with TeleTech was open and obvious with abundant notice provided to plaintiff. Moreover, it is stressed that plaintiff has not demonstrated, at this juncture, that it has suffered any direct harm by Crowley’s actions. Finally, defense counsel submits, plaintiff delayed in seeking this relief over one month from Crowley’s termination date. Plaintiff replied with a letter dated August 19, 2008, and presented no additional arguments, other than that, in the cases relied on, the courts did not expressly identify as a relevant *346 consideration whether the agreement in question expressly authorized an extension of the restrictive covenant’s term.
Initially, it must be noted that, in both cases cited by plaintiff, the term of the restriction contained in each noncompetition provision had expired by the time of the issuance of the injunction extending its term. In Stern, the decision to extend the term was made by the Appellate Division, not the trial judge, and came (July 12, 1976) over a month after even the extended term had elapsed (two weeks after May 15, 1976). (J. H. Goldberg Co. v Stern, 53 AD2d at 252 [“(t)hat time having elapsed, Stern should forthwith be permitted to resume his business activity”].) Accordingly, the portion of Stern relied on by plaintiff was pure dictum, and the extended relief ordered, whether as a reformation of the parties’ contract or as an adjunct of the court’s broad equitable powers (see below), was entirely gratuitous. In Edelman, the injunction carrying the extended term came in the sale of business context, not a former employee context, and the extension was ordered because defendant “hid his ownership interest” in the competing business for the entire period of the noncompete agreement. (New York Real Estate Inst., Inc. v Edelman, 42 AD3d at 322 [“status quo is the result of defendant’s deception”].) In reviewing these two cases, it is worth remarking that neither case has been cited as authority to any significant extent. Of utmost importance, there is no authoritative case law which cites either for the proposition that it is proper, on a motion for a preliminary injunction and before any discovery, to extend the duration of a restrictive covenant in a situation such as the present one.
In the present case, mindful of the lack of established deceit referable to defendant’s conduct in violating the restrictive covenant via his new employment and the openness of Crowley’s prior announcement of his then planned new employment, the facts before the court distinguish the current matter from the facts warranting the extended relief ordered in the cases cited by plaintiff. Notwithstanding the authority cited by plaintiff, judicial reformation of a contract, even in the exercise of the court’s equitable powers is an extraordinary act. There currently is no sufficient evidence that Crowley solicited or procured customers for TeleTech during the time period between when he left plaintiff and the date of the imposition of the preliminary injunction. (JA Apparel Corp. v Abboud, 2008 WL 2329533, *31, 2008 US Dist LEXIS 44599, *100 [SD NY, June 5, 2008] [posttrial denial of request to extend the term of *347 the covenant because plaintiff failed, to prove “damage flowing to JA Apparel as a result of the breaches”].) Contrary to the proof here, in J. H. Goldberg Co. v Stern (supra), there was a finding, and I must stress after trial, that the former employer actually solicited clients/customers in competition with plaintiff in addition to the finding of breach by reason of being employed by a competitor. (53 AD2d at 250 [“aggressive efforts to solicit business”].) In addition, although the appeal in New York Real Estate Inst., Inc. v Edelman (supra) was from a denial of a motion for a preliminary injunction, the record was “undisputed” (42 AD3d at 321) that “defendant hid his ownership interest in the competing . . . [business] for the entire two-year duration of the noncompete agreement” (42 AD3d at 322), and there was undeniable proof of his conduct of the competing business, a real estate school, for the entire two-year period. The factor of deception in regard to Crowley’s new employment is not, on the current record, present here, nor is there any proof that Crowley used the computer information he took to the detriment of plaintiff.
As alluded to above, I believe that it is premature to decide the issue. The decisions in JA Apparel and J. H. Goldberg Co. came after trial. In the face of ample Court of Appeals precedent which directs the lower courts not to rewrite the parties’ contract at variance with its terms, particularly for the purpose of affording one party broader relief than it had bargained for (Chimart Assoc. v Paul, 66 NY2d 570, 573-574 [1986] [collecting authorities]; George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [1978] [“freedom to contract would not long survive courts’ ready remaking of contracts that parties have agreed upon”]), we have two Appellate Division decisions seemingly doing just that.* (See also Collins v Harrison-Bode, 303 F3d 429, 434-435 [2d Cir 2002] [collecting the relevant New York authorities]; EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19-20 [2005] [“where parties have entered into a contract, *348 courts look to that agreement ‘to discover . . . the nexus of (the parties’) relationship and the particular contractual expression establishing the parties’ interdependency’ ”], quoting Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 160 [1993].) The direction not to rewrite the parties’ contract has come also in the context of a restrictive covenant. (Ross v Food Specialties, 6 NY2d 336 [1959] [refusing to rewrite a restrictive covenant so as to expand its scope]; cf. BDO Seidman v Hirshberg, 93 NY2d 382, 394-395 [1999] [permitting in limited circumstances a “narrowing” of the scope of a restrictive covenant not as a reformation or “rewriting” of a contract, but presumably as part of the court’s equitable enforcement powers].) In view of these Court of Appeals cases, it must be concluded that the Appellate Divisions were acting pursuant to their broad equitable powers, once the invocation of equity was otherwise determined on a proper record to warrant intervention, in fashioning relief appropriate to the circumstances. Unless the record is undisputed, or the proof so strong as to warrant the award of preliminary relief beyond that called for under the parties’ agreement, e.g., Edelman {supra), the court should decline the invitation to extend a restrictive covenant’s term until, after discovery, a fuller record is developed or expiration of that term is rapidly approaching, a problem not yet present here.
The decision to await a fuller record is further supported by the fact that, when our Court of Appeals is ultimately faced with this issue, it will be confronted by “a split of authority over the question of whether the duration of the injunction may extend past the termination date specified in the covenant itself.” (2 Louis Altman and Malla Pollack, Callmann on Unfair Competition, Trademarks and Monopolies § 16:22 [4th ed] [collecting formidable authority contra Edelman and Stern in addition to that marshaled in defense counsel’s letter of August 18th].) Accordingly, the request for a determination whether an extended term should be enforced is denied, of course without prejudice.
On the issue of an undertaking, and taking care not to pretermit the parties’ respective proofs on the ultimate damage issue, the amount is set at $150,000.

 I say this only because of the gratuitous nature of the relief ordered in Stern, without explanation of whether it was ordered as reformation of the contract or as an adjunct of the Court’s broad equitable powers, and without citation of any supporting authority, and because the abstract rule announced in Edelman, that when “a party unilaterally breaches an agreement not to compete and the time period during which competition was precluded has since expired, such time period may be extended for the length of time that the offending party was in violation of the agreement” (42 AD3d at 322), was entirely unrelated to the equitable reasons (defendant’s deception) the court gave for its decision to extend the covenant’s term.